**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Civil Action No.: 9:17-cv-80746**

EVAN BLATT, individually,
  Plaintiff,

    v.

NO LIMIT ENTERTAINMENT, INC.,
RYAN WITKOWSKI, individually,
PAULA PIPITONE, individually, and
NPPT POKER, LLC,
  Defendants.                                   /

## **PLAINTIFF'S ORIGINAL COMPLAINT**

### I.    **SUMMARY**

Congress designed the Fair Labor Standards Act of 1938 ("FLSA") to remedy situations "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). To achieve this broad remedial purpose, the FLSA establishes minimum wage and overtime requirements for covered employees. 29 U.S.C. §§ 206, 207. These provisions, coupled with an effective integrated cause of action within the FLSA, prevent employers from pilfering the wages rightfully earned by their employees. See, <u>Billingsley v. Citi Trends Inc.,</u> 13-12561, 2014 WL 1199501 (11th Cir. Mar 25, 2014).

1. This case implicates an interstate Bar Poker League which goes by the trade name of "No Limit Pub Poker Tour (NPPT)". The entities and employers implicated are NO LIMIT ENTERTAINMENT Inc.

2. Defendants have a longstanding policy of misclassifying their employees as independent contractors.

3. Defendants required and/or permitted Plaintiff Evan Blatt("Plaintiff") to works as a poker dealer approximately twenty-six (26) hours a week but refused to compensate him at the applicable minimum wage rate.

4. In fact, defendant failed to pay plaintiff any wages whatsoever, throughout his employment.

5. Throughout his employment with Defendants, Plaintiff's only compensation was in the form of tips received from Defendants' customers.

6. Defendants' practice of failing to pay tipped employees pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage provision as does Defendants' practice of siphoning away those tips for company profits as well as to distribute to their customers as prizes. See 29 U.S.C. §§ 203, 206.

7. Plaintiff brings action to recover the unpaid wages owed him for the worked with NPPT for the three (3) year period before this complaint was filed to the present. Plaintiff also seeks reimbursement of all tips illegally taken from him by NPPT for the entire term of his employment. Plaintiff also seeks liquidated damages for retaliation committed by the Defendants after Defendants were notified of Plaintiff's intent to bring suit for FLSA wage and hour violations.

## II. SUBJECT MATTER JURISDICTION AND VENUE

8. This court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

9. Venue is proper in the Southern District of Florida because a substantial portion of the events forming the basis of this suit occurred in this District, and Defendants' headquarters are located in this District.

10. Defendants' headquarters are located at 6031 Robinson Street, Jupiter, FL 33458

11. Plaintiff worked at three (3) venues as a poker dealer for the Defendant during the time of his employment. O'shea's Pub located at 513 Clematis Street, West Palm Beach, FL 33401. Sports Page Bar and Grill located at 535 25th ST, West Palm Beach, FL 33407. Dorrians Red Hand, Located at 215 Clematis Street, West Palm Beach, FL 33401. it is Defendants' failure to pay Plaintiff for this work that gives rise to the instant claims.

### III. PARTIES AND PERSONAL JURISDICTION

12. Plaintiff Evan Blatt is an individual residing in Palm Beach County, Florida. Plaintiff's written consent to this action is attached hereto as Exhibit "A."

13. Defendant No Limit Entertainment Inc. of Jupiter, FL is a domestic corporation doing business in Florida for the purpose of accumulating monetary profit. This Defendant may be served as follows: Carl Pipitone, 6031 Robinson Street, Jupiter, FL 33458

14. Defendant Paula Pipitone is an officer of No Limit Entertainment. This Defendant may be served as follows: Paula Pipitone, 6031 Robinson Street, Jupiter, FL 33458

15. Defendant Ryan Witkowski is an officer of No Limit Entertainment. This Defendant may be served as follows: Ryan Witkowski, 132 Dunmore Drive, Jupiter, FL 3345

### IV. FLSA COVERAGE

16. In an FLSA case, the following elements must be met. "(1) [plaintiff] is employed by the defendant, (2) The defendant engaged in interstate commerce, and (3) the defendant failed to pay [plaintiff] minimum or overtime wages," *Freeman v. Key Largo Volunteer Fire & Rescue Dept., Inc.,* 494 Fed. Appx. 940, 942 (11th Cir. 2012) cert. denied 134 S. Ct. 62, (U.S. 2013)

## **EMPLOYMENT RELATIONSHIP**

17. "To be 'employed' includes when an employer 'suffer[s] or permit[s] [the employee] to work.'" *Id* at 942 (citing 29 U.S.C. § 203(g)). "To determine if an individual is an employee, 'we look at the economic reality of all the circumstances' surrounding the activity." *Id*. (citing Brouwer, 139 F.3d at 819). "We refer to this test at the 'economic reality' test." *Id*. (citing *Villarreal v. Woodham,* 113. F.3d 202, 205 (11th Cir.1997)). "The touchstone of the economic reality test is the alleged employee's economic dependence on the employer." Id.

18. Here, the Defendant had the power to hire and fire Plaintiff.

19. Defendant gave Plaintiff extensive training upon being hired. Plaintiff did not know how to properly deal poker or have any training in being a poker dealer prior to being hired by NPPT. Defendant also offered retraining if any dealers weren't performing up to company standards.

20. Defendant asks that Plaintiff and all dealers in their league wear a shirt with the NPPT logo while dealing for them.

21. Defendant controls where and when the Plaintiff works. For example, Plaintiff worked at O'shea's Pub and dealt cards for NPPT every Sunday and Monday from 6:00pm until closing for approximately 7 years.

22. Defendant determined the rate and method of payment of Plaintiff and all dealers in the NPPT League. Defendant could ask for a $5 optional gratuity from each player in each tournament and was limited by Defendant to only allow one re-entry per player per game for an additional $5 gratuity.

23. Defendant determined the nature of all games dealt by Plaintiff. Determining the length of blinds, the amounts of chips players received at the start of the games, the denominations of chips given to players, and the amount of chips rewarded to players for making purchases at the venue where the game is being held.

24. Defendant would determine the nature of the Plaintiff's employment. NPPT has "First Dealers" and "Second dealers". First dealers get to keep a larger share of their optional gratuities than second dealers and are given more opportunities to deal games. Defendant determines which dealers are first dealers and which are second dealers.

25. Defendant mandated that the poker chips that are used in the games are "League Chips" which must be purchased from the Defendant and have the Defendant's company logo on them.

26. Upon hiring, Plaintiff was forced to sign an "Independent Contractor agreement" which contained language forbidding the Plaintiff and any other dealers in NPPT from dealing poker for any company other than NPPT, with minor exceptions for dealers who deal in licensed gaming establishments. Dealers are even forbidden by Defendants from dealing games in their own homes and are forbidden from dealing charity poker tournaments.

27. Plaintiff and other dealers who work for the Defendant are an integral part of the Defendant's business.

28. Plaintiff worked each night for optional gratuities from poker players who compete for gift certificates to the hosting venue. Plaintiff was required by Defendant to give the Defendants a forced share of these optional gratuities based upon the number of players who played in each game throughout the night.

29. The forced shares of dealer's gratuities received by the Defendant from the Plaintiff and the other dealers in the league represent nearly one hundred percent of the Defendant's income.

30. Plaintiff was required by Defendant to keep records of the number of players in each game, and the names of the players who finished in the top spots of each game. Plaintiff was also required to sign up new players to the league and enter the new player's information into the Defendant's database.

31. At the end of each shift, Defendant was required by the Plaintiff to turn in the records kept from the games along with the forced share of the Plaintiffs gratuities. Plaintiff was required to enter the player records into the Defendant's online database.

32. The Plaintiff's employment with the Defendant is entirely open-ended. Plaintiff has been dealing cards for the Defendant on the same days of the week and for the same times each day for approximately seven years.

33. Defendants mandate that Plaintiff and other dealers recorded their data from each shift into the Defendants' database within 12 hours of the end of each night's work. Defendant threatened to punish Plaintiff if records were not recorded on time. Punishments spanned from monetary fines to loss of employment.

34. Defendant would micromanage Plaintiff and all dealers in NPPT using Facebook posts and videos that were posted to a private "Dealer Only" Facebook Page.

35. At all material times, Defendant has been an employer within the meaning of 3(d) of the FLSA. 29 U.S.C. § 203(d).

36. Moreover, the Fair Labor Standards Act ("FLSA") defines the term "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to any employee." 29 U.S.C. § 203(d)

37. The statutory definition of "employer" includes corporate officers, participating shareholders, supervisors, managers, or other employees where that individual exercises some supervisory authority over employees and is responsible in whole or in part for the alleged violation. See *Id.*; *Patel v.Wargo*, 803 F.2d 632, 636 (11th Cir. 1986); *Reich v. Circle C. Investments, Inc.* 998 F.2d 324, 329 (5th Cir. 1993); *Donovan v. Grim Hotel Co.,* 747 F.2d 966, 971-72 (5th Cir. 1984).

38. Defendant Carl Pipitone is the President and manager of No Limit Entertainment, Inc.

39. Defendant Ryan Witkowski is a Vice President of No Limit Entertainment, Inc.

40. Defendant Paula Pipitone is a Vice President of No Limit Entertainment, Inc.

41. As Such, Defendants Carl Pipitone, Ryan Witkowski, and Paula Pipitone are the employers of the Plaintiff within the meaning of 3(d) of the FLSA and are jointly, severally, and liable for all damages.

**ENTERPRISE AND INDIVIDUAL COVERAGE**

42. "The Fair Labor Standards Act (The "FLSA"), 29 U.S.C. § 207(a)(1), requires an employer to pay minimum wage to an hourly worker if the employer can establish individual coverage or enterprise coverage." *Silver v. Dr. Neal krouse*, D.O., P.A., 06-60634-CIV, 2007 WL 4098879 *2 (S.D. Fla. Nov. 16, 2007) (citing *Thorne v. All Restoration Svcs., Inc.*, 448 F.3d 1264, 1265 (11th Cir.2006)). "To qualify for enterprise coverage, Defendants must 'ha[ve] employees engaged in commerce or in the production of goods for commerce, or ha[ve] employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.'" Id. (citing 29 U.S.C. § 203(s)(1)(A)(i) and (ii)). "The phrase 'engaged in commerce' is interpreted broadly and liberally." *Id.* (citing *Alonso v. Garcia*, 147 Fed. Appx. 815, 816 (11th Cir. 2005)).

43. At all material times, Defendants have been an enterprise within the meaning of 3(r) of the FLSA. 29 U.S.C. § 203(s)(1).

44. Defendants' employees, including Plaintiff, have handled materials that have been moved or produced in interstate commerce, which were used in the course of Defendants' business operations.

45. Defendants advertise on the internet, its poker league (NPPT) functions in at least three (3) states other than Florida. They communicate via mail, email, and telephone with their leagues outside of the state of Florida, and sell their merchandise across state lines.

46. Defendants, at all times relevant hereto have maintained business operations two (2) or more states simultaneously.

47. Furthermore, Defendants have, and have had, and continue to have, an annual gross business volume in excess of the statutory standard.

48. At all material times, Plaintiff was an individual employee who engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 206-207.

## WAGE VIOLATIONS

49. Defendants misclassify Plaintiff and all other dealers as independent contractors.

50. Defendants failed to pay Plaintiff and all other dealers any compensation whatsoever.

51. The money Plaintiff received directly from Defendants' customers are tips.

52. Defendants siphoned Plaintiff's tips by requiring Plaintiff to give a forced share of his tips to the Defendants after every shift worked. This money was mostly used for towards Defendants' salary and profits, and some of the money went towards prizes given out to Defendants' customers. Since none of the money made it back to the Plaintiff or any other dealers, the money cannot be thought to have been taken as part of a tip pool.

## V. FACTS

53. Plaintiff has been victimized by Defendants' common policy and plan to violate his rights under the FLSA by denying him minimum wage and the tips he lawfully earned.

54. Defendants operate bar poker games in over 200 bars and restaurants in Florida and at least three (3) other States.

55. Plaintiff Evan Blatt was a poker dealer for the Defendants at O'shea's Pub and Dorrians and Sports Page Bar and Grill.

56. Therefore, Plaintiff has first-hand knowledge of the pay violations in NPPT, the poker league owned and run by the Defendants.

57. Plaintiff and the other dealers in the league are compensated exclusively through tips from Defendants' customers.

58. Defendants did not pay Plaintiff compensation for any hours worked dealing their poker games.

59. Defendants charged Plaintiff and the other dealers certain fees per shift worked.

60. Defendants mandated a forced share of the Plaintiff's tips be given to the Defendants based on the number of players in each poker game.

61. Defendants illegally classified Plaintiff and all the other dealers as independent contractors. However, at all times, the Plaintiff was an employee of the Defendants as that term is defined by the FLSA and relevant case law.

62. Defendants hired, fired, and supervised the Plaintiff and all other dealers in NPPT. They also set the schedule for the Plaintiff, and controlled the amount of tips the Plaintiff could earn by limiting the number of players at a table and the number of re-entries each player could have.

63. Defendants controlled Plaintiff's appearance by mandating that a shirt with their company logo be worn while working on each shift.

64. Defendants constantly threatened to discipline Plaintiff for not following rules. Punishments would range from monetary fines to loss of shifts.

65. Defendants mandated that Plaintiff submit a report after each shift detailing the number of games played, the number of players in each game, and the names of the top finishing players in each game.

66. Defendants tracked Plaintiff's performance through these mandatory reports as is common for typical employer-employee relationships.

67. Defendants forced Plaintiff to sign an "Independent Contractor Agreement" which contained non-compete covenants forbidding Plaintiff from earning money dealing poker for anyone other than the Defendants.

68. Defendants controlled Plaintiff's performance by providing mandatory rules on how each poker game would be dealt.

69. Defendants decided which chips could be used, how many chips each player would get at the start of each game, the denomination of chips given at the start of each game, the length of blind levels, the minimum and maximum number of players that may sit at each table, what type of game may be played, and how long breaks from dealing would last.

70. Defendant mandated that each player would receive only 1 re-entry chip, which significantly limited the profitability of each game dealt by the Plaintiff and all other dealers in the NPPT Poker League.

71. Plaintiff was employed by the Defendants from Approximately January 2011 to the present.

72. Defendants misclassified Plaintiff and all other dealers in their poker league to avoid their obligations to pay them pursuant to the FLSA.

73. Plaintiff worked for the defendants at the same times on the same days of the week for approximately 7 years.

74. Defendants set the schedule for the Plaintiff and had exclusive power to alter the start and end time of each shift.

75. The following further facts demonstrate the Plaintiff's status as an employee:

a. Defendants had sole right to hire and fire Plaintiff

b. Defendants required Plaintiff to sign an employment agreement at the beginning of employment.

c. The employment agreement contained language forbidding Plaintiff from dealing poker for any other poker companies or himself.

d. Defendants made the decision not to compensate Plaintiff at the FLSA minimum wage rate.

e. Defendants mandated the type of chips Plaintiff could use while dealing his poker games. The required chips displayed the Defendants/ company logo.

f. Defendants provided extensive rules to Plaintiff and all other dealers as to how every poker tournament is to be dealt.

g. Plaintiff has made no financial investment in Defendants' business.

h. Plaintiff was hired as a permanent employee and has worked for Defendants for years.

i. Defendants supervised Plaintiff and all other dealers through constant updates to rules and policy which were delivered through a private Facebook page in which Defendants instructed Plaintiff and all other dealers.

j. Plaintiff and all other dealers were solely responsible for signing up all new customers of No Limit Entertainment(NPPT). Plaintiff and other dealers were responsible to input new players' information into the Defendants' database.

k. Defendant would commonly hold competitions among dealers in the league and give a prize to the dealer who input the most new customers into the Defendants' database over a determined time period.

l. Defendant Carl Pipitone posted extensive videos on the private Facebook page giving Plaintiff and all other dealers extensive supervision as to how they would perform their duties as dealers in his league. These videos were only visible to Defendants and their employees.

m. Defendant Carl Pipitone repeatedly posts instructions to all dealers on the Dealer only Facebook page. This enables the Defendant to micromanage every aspect of the Plaintiff's and other dealers' employment without having to physically see them.

n. Plaintiff received numerous phone calls and text messages from the Defendant Carl Pipitone in regard to proper performance as an employee.

o. Defendants would hold mandatory dealer meetings where Plaintiff and other dealers would receive extensive supervision as to how their duties as dealers were to be performed. These meetings were also recorded and broadcast on the private Facebook page for dealers to review.

p. Defendants required Plaintiff wear a shirt with their company logo while working.

q. Defendants repeatedly threatened discipline for not following their rules. The threatened discipline was in the form of suspensions and monetary fines.

r. Defendants' business performs in over 200 bars and restaurants, their business spans over three (3) states and thousands of miles, and they appear to have 0

employees. All of the Defendants' employees have been misclassified as independent contractors.

    s. Defendants scheduled Plaintiff's shifts and as such had sole control of Plaintiff's opportunity for profit.

    t. Plaintiff and other dealers earn approximately 100 percent of the Defendants gross revenue by working for tips and then being forced to turn over a share of those tips to the Defendants. Without the dealers, the Defendants' company cannot function.

76. Defendants misclassified Plaintiff as an independent contractor to avoid their obligations to pay him pursuant to the FLSA.

77. Plaintiff is not exempt from minimum wage requirements under the FLSA.

78. Plaintiff received no compensation whatsoever from Defendants and thus, Defendants have violated the minimum wage requirement of the FLSA see 29 U.S.C. § 206

79. Defendants' method of paying Plaintiff in violation of the FLSA was willful and was not based on a good faith and reasonable belief that its conduct complied with the FLSA. Defendants misclassified Plaintiff with the intent to avoid paying him in accordance with the FLSA.

80. In May of 2017, Plaintiff notified Defendant Carl Pipitone in writing of his intent to file an FLSA claim for wage and hour violations. Immediately after this notification, Defendant asked Plaintiff to resign from his position as poker dealer at O'shea's Pub, which represents two thirds of the Plaintiff's income as an employee of No Limit Entertainment, in violation of 29 U.S.C. § 215(a)(3).

81. Within one week of Defendant being notified of the Plaintiff's FLSA claim, Defendant removed Plaintiff from the dealer only Facebook page in retaliation. This Facebook page

included instructions from Defendants to all of their dealers on how to specifically perform the duties of their employment. All other dealers in the Defendants' league are on the dealer only Facebook page. Plaintiff's removal from the page by the defendant was discrimination committed in retaliation for the Plaintiff's FLSA claim and a violation of the FLSA under 29 U.S.C. § 215(a)(3).

82. Further, at all material times, Defendants have operated as a "single enterprise" within the meaning of 3(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1). That is, Defendants perform related activities though unified operation and common control for a common business purpose. See *Brennan v. Arnheim and Neely, Inc.* 410 U.S. 512, 515 (1973); *A-One Med. Servs., Inc.,* 346 F.3d 908, 914-15 (9th Cir. 2003).

83. All Defendants have a common business purpose for profit providing poker tournaments to bars and restaurants.

84. The individually named Defendants kept employment records regarding hiring employees at No Limit Entertainment, Inc. and the poker league NPPT.

85. The individually named Defendants own and operate No Limit Entertainment, Inc.

86. The individually named Defendants created and implemented companywide policy of misclassifying poker dealers as independent contractors of No Limit Entertainment and its poker league NPPT.

87. All corporate defendants have the same registered agent.

88. Defendants operate a chain of poker leagues under the assumed name "NPPT" Indeed, they advertise themselves as such on their website. The fact that they run each league identically and their customers can expect the same kind of customer service regardless of the location is the Defendants' main advertising selling point.

89. Defendants represent themselves to the general public as one poker league-NPPT-operating at multiple locations. They share employees, have a common management, pool their resources, operate from the same headquarters, have common ownership, and have the same operating name. This is a family of poker leagues that advertises together on the same website, provides the same array of services to its customers, and uses the same business model. The "NPPT" family of poker leagues exists under the control and direction of the Defendants. The family of poker leagues provides the same service product to its customers by using a set formula when conducting its business. Part of that set formula is the wage violation alleged in this complaint. These facts represent a classic example of "corporate fragmentation."

## VI. VIOLATION OF 29 U.S.C. § 206

90. Plaintiff incorporates all allegations contained in the foregoing paragraphs.

91. Defendants' practice of failing to pay Plaintiff at the required minimum wage rate violates the FLSA. 29 U.S.C. § 206. In fact, Defendants do not compensate the poker dealers whatsoever for any hours worked.

92. None of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to Defendants or Plaintiff.

93. Defendants failed to keep adequate records of Plaintiff's work hours and pay in violation of section 211(c) of the FLSA. See 29 U.S.C. § 211(c).

94. Federal law mandates that an employer is required to keep for three (3) years all payroll records containing, among other things, the following information:

    a. The time of day and day of week of which the employees' work week begins;

b. The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

c. An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

d. The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

e. The hours worked each workday and the total hours worked each workweek;

f. The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

g. The total premium for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under this section;

h. The total additions to or deductions from wages each pay period including employee purchase orders or wage assignments;

i. The dates, amounts, and nature of the items which make up the total additions and deductions;

j. The total wages paid each pay period; and

k. The date of payment and the pay period covered by payment.

**29 C.F.R. 516.2, 516.5.**

95. Defendants have not complied with federal law and have failed to maintain such records with respect to Plaintiff and other dealers in their poker league. Because Defendants' records are inaccurate and/or inadequate, Plaintiff can meet his burden under the FLSA by

proving that he, in fact, performed work for which he was improperly compensated, and produce sufficient evidence to show the amount and extent of the work "as a matter of a just and reasonable inference." See, e.g., <u>Anderson v. Mt. Clemens Pottery Co.,</u> 328 U.S. 680, 687 (1946).

### VII. VIOLATION OF 29 U.S.C. § 215(a)(3)

96. Plaintiff incorporates all allegations contained in the foregoing paragraphs.
97. Plaintiff Evan Blatt informed Defendant Carl Pipitone in writing of his intent to file action under the FLSA for wage and hour violations on May 25th, 2017.
98. Immediately following this announcement Defendant Carl Pipitone asked Plaintiff to resign from his position as dealer for NPPT at O'shea's Pub on Sunday and Monday nights.
99. Plaintiff's work at O'shea's Pub represents two thirds of his income from his employment with NPPT.
100. Plaintiff has lost income as a result of not being able to work his regular shifts at O'shea's Pub, which he has worked for approximately 7 years.
101. This request is clear retaliation which is prohibited under the FLSA prohibited by 29 U.S.C. § 215(a)(3).
102. 102.Approximately one week later, Defendants removed Plaintiff from the NPPT Dealer Only Facebook Page.
103. This Facebook page is where the Defendants would micromanage the dealers and would instruct them as to how their work was to be performed.
104. These instructions came in the form of Facebook posts and videos where Defendant Carl Pipitone would give all NPPT dealers rules to follow as they did their regular nightly work.

105. Dealers would also communicate with each other on this page, posting available shifts for any dealers looking for additional work on a fill-in basis.

106. Plaintiff has lost opportunity for income as a result of being removed from the NPPT Dealer Only Facebook Page.

107. All other dealers in the Defendants' league who use Facebook are on the Defendants' dealer page.

108. Defendants' removal of Plaintiff from the NPPT Dealer Only Facebook Page is the modern equivalent of Plaintiff no longer being invited to daily staff meetings.

109. Defendants' removal of Plaintiff from the NPPT Dealer Only Facebook Page is clearly discrimination by the Defendants and retaliation for Plaintiff bringing action for FLSA violations, which is prohibited by 29 U.S.C. § 215(a)(3).

## VIII. DAMAGES SOUGHT

110. Plaintiff is entitled to recover compensation for the hours he worked for which he was not paid at the federally mandated minimum wage rate.

111. Plaintiff is also entitled to all misappropriated funds, including all funds that were charged as fees and penalties, and all tips that were taken.

112. Plaintiff is entitled to an amount equal to all of his unpaid wages and fees as liquidated damages. 29 U.S.C. § 216(b).

113. Plaintiff is entitled to an amount equal to the total amount owed as liquidated damages for Defendants' retaliation against Plaintiff for bringing this FLSA clam. 29 U.S.C. § 216(b)

114. Plaintiff is entitled to recover his attorney's fees and costs as required by the FLSA 29 U.S.C. § 216(b).

## IX.     JURY DEMAND

115. Plaintiff hereby demands a trial by jury.

## X.     PRAYER

116. For these reasons, Plaintiff respectfully requests that judgment be entered in his favor awarding him the following relief:

    a. All unpaid wages at the FLSA mandated minimum wage rate;

    b. All misappropriated tips;

    c. All misappropriated funds that were labeled as fees or otherwise;

    d. An equal amount of all owed wages and tips as liquidated damages as allowed under the FLSA;

    e. An equal amount of all owed wages and tips as liquidated damages for Defendants' retaliation against Plaintiff under the FLSA;

    f. Reasonable attorney's fees, costs, and expenses of this action as provided by the FLSA; and

    g. Such other relief to which the Plaintiff may be entitled, at law or in equity.